IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LETA M. WALKER o/b/o )
CLARA MAE KRETZSCHMAR, )
　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　 )
v. ) Case No. CIV-08-247-RAW
　　　　　　　　　　　　　　　　 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
　　　　　　　　　　　　　　　　 )
　　　　　Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Leta M. Walker on behalf of Clara Mae Kretzschmar (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See,* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Ms. Kretzshmar was born on January 7, 1943 and was deceased at the time of the entry of the ALJ's decision. Claimant earned a college degree in nursing. Claimant worked in the past as a licensed practical nurse, registered nurse, occupational health nurse, and director of occupational health nursing. Claimant alleged an inability to work beginning February 26, 1993 due to severe arthritis in her left ankle and both hands, cervical disk

disease and arthritis, diabetes, hypertension, pancreatitis, a colon resection, anxiety, panic, and social phobia.

## Procedural History

The history of this case through the courts has been tortured. On August 15, 1994, Claimant protectively filed for disability insurance benefits under Title II of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 13, 1996, a hearing was held before ALJ Bennett. By decision dated September 24, 1996, the ALJ found that Claimant was not disabled during the relevant period. On April 2, 1998, the Appeals Council denied Claimant's request for review.

Claimant appealed to this Court. The case has been reversed and remanded resulting in unfavorable decisions no less than four times. In the latest series of decisions, the Appeals Council remanded the case to the ALJ on October 12, 2005. Since Ms. Kretzschmar had died during the course of the various appeals and her husband had also passed away, Ms. Walker, Claimant's daughter, was substituted as the party plaintiff. The latest of many supplemental hearings was conducted on August 18, 2006 before ALJ Tela L. Gatewood. She issued an unfavorable decision on May 6, 2008. No action was taken to bring the case before the Appeals Council. Therefore, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20

C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

In the latest decision before this Court for review, the ALJ made her decision at step five of the sequential evaluation. The ALJ determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and had sufficient transferrable skills to perform the sedentary, semi-skilled jobs of nurse consultant and hospital admitting clerk. Claimant's date of last insured status was December 31, 1998.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in failing to properly evaluate the medical opinions of two of Claimant's treating physicians as well as a medical expert. She also contends the ALJ erred in reaching an RFC which was not supported by substantial evidence.

**Treating and Expert Medical Opinions**

Claimant's arthritic problems first arose in May of 1974 in her feet. (Tr. 130-31). Claimant then began experiencing back and neck pain which resulted in decreased sensation in her fingers in 1984. Testing revealed a large central disk herniation at C5-6 with prominent bilateral nerve root involvement. (Tr. 100, 112). On November 2, 1984, Claimant underwent a spinal fusion with disk excision at the C5-6 level. (Tr. 97, 110). Claimant continued to

suffer pain from this condition.

On December 29, 1987, Claimant went to the emergency room complaining of severe abdominal pain. It was later determined she had a perforated sigmoid diverticulum with an adjacent abscess such that she received a segmental colon resection with the placement of a colostomy bag and Hartmann's pouch. (Tr. 143, 172-74).

On May 1, 1988, Claimant underwent an elective surgical colostomy takedown and a partial left colectomy with extensive lesions being found. (Tr. 248-250). This required a two week hospitalization.

On September 28, 1991, Claimant developed arthritis in her left foot and ankle. (Tr. 352). On December 3, 1991, Claimant underwent a triple arthrodesis of her left foot and ankle with excision of excess bone. This procedure involves the fusion of the subtalar, calcaneocuboid and talonavicular joints to provide stability to her foot. (Tr. 339-40). Claimant reported improvement in August of 1992. (Tr. 355).

On June 30, 1994, Claimant returned to the emergency room with severe epigastric pain, abdominal distention, and profuse sweating with high blood pressure and an abnormal EKG. Claimant was diagnosed with pancreatitis and alcoholism. (Tr. 360-64, 384-85). Claimant was treated by Dr. Stephen Hutchins. Eventually, Claimant received treatment for her alcohol dependence.

On December 29, 1994, Claimant underwent a consultative examination with Dr. J. T. O'Connor, Jr. Dr. O'Connor concluded Claimant suffered from degenerative arthritis of the ankles, bilaterally, status post triple arthrodesis, left ankle, hepatomegaly, possibly associated with a history of alcoholism and recent toxic hepatitis, and probable osteoporosis with risk factors, including smoking, alcohol use and post menopausal hormone deficiency without Estrogen replacement therapy. (Tr. 393-95).

On June 14, 1996, Claimant returned to Dr. Hutchins experiencing bilateral thumb pain. X-rays revealed advanced degenerative change in the right thumb, calcification of the cartilage in the right wrist, degenerative changes in the left hand and wrist, and overgrowth of bone in the left ankle. (Tr. 419-20). Claimant also received treatment for diabetes and hypertension. (Tr. 517-22).

In 1998 and 1999, Claimant was treated repeatedly by Dr. Hutchins for her diabetes condition, hypertension, diabetic neuropathy in her legs, pain and tingling in her feet, right shoulder, arm and hand. (Tr. 500-513, 524, 5236, 530). Claimant also continued to suffer from cervical degenerative arthritis. (Tr. 504).

On October 11, 1999, Dr. Hutchins completed a Physical Residual Functional Capacity Assessment on Claimant. He found

7

Claimant was markedly limited in her ability to lift and carry, and ability to deal with heights. He set forth that Claimant was moderately limited in her ability to reach, feel, push and/or pull, walk, work with moving machinery, ability to work with fumes, and ability to deal with vibrations. Dr. Hutchins acknowledged Claimant's degenerative joint disease in her hands was severe enough to affect her ability to hold objects. (Tr. 537-41).

On August 2, 2000, after suffering a seizure, Claimant returned to the hospital and was treated by Dr. Hutchins. She was complaining of decreased appetite and increasing weakness. (Tr. 588-89, 618). Claimant's blood sugar was high and her blood cultures indicated significant infection. (Tr. 586-89). Claimant continued to deteriorate and died on August 4, 2000 due to cardiopulmonary arrest, esophageal bleeding, liver cirrhosis, and alcoholism. (Tr. 564, 586-98).

On August 7, 2002, Dr. Herbert P. Reinhardt answered interrogatories posed by the ALJ. Dr. Reinhardt did not believe Claimant met a listing for her musculoskeletal impairment but did meet a listing for chronic alcoholism, liver damages and pancreatitis. (Tr. 570-573).

On August 15, 2006, Dr. O'Connor authored a letter in which he set out Claimant's history of medical problems. He also stated at the time of his consultative examination, he believed Claimant was

suffering from a significant impairment which prevented her from performing her occupation or "any occupation for that matter." He recounted that he believed Claimant's impairments were so severe and of such a degree that she was unable to expect to have significant improvement and would actually get worse. He did not think Claimant would ever return to her work because of an inability to perform her function, including functions of daily living. (Tr. 805-06).

In his decision, the ALJ found Claimant retained the RFC to perform a range of light and sedentary work. He found Claimant could lift and/or carry and push and/or pull 20 pounds occasionally and 10 pounds frequently, stand or walk on smooth surfaces four hours in an eight hour workday, occasionally stoop and/or crouch but that she could not use her left foot for foot controls, climb ladders, ropes or scaffolds, work at or with unprotected heights or hazards, work overhead, or use vibrating tools with a limited ability to tolerate significant changes in the work place. (Tr. 763).

With regard to Dr. Hutchins' RFC evaluation, the ALJ found Dr. Hutchins' RFC assessment to be "of little assistance to the relevant period of time." He found nothing in the record to support Dr. Hutchins' finding that Claimant dropped things or could lift only one pound. (Tr. 767).

9

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support

or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Hutchins was Claimant's treating physician. The ALJ rejected Dr. Hutchins' assessment of Claimant's condition, contending it was apparently outside of the relevant time period. However, this conclusion is curious since Claimant's date of last insurance was in 1998 - clearly making Dr. Hutchins' RFC assessment relevant in time from 1999. Additionally, the ALJ again failed to follow through with the required analysis of Dr. Hutchins' position as a treating physician, stating the weight he afforded the physician's opinion on restrictions of Claimant's ability to lift and carry. Indeed, Dr. Hutchins' opinions were affirmed in large measure by Dr. Reinhardt, the medical expert the ALJ consulted in the case. This deficiency in the opinion mandates a reversal of

11

the ALJ's decision.

With regard to the opinions of Dr. O'Connor, the ALJ gave the doctor's opinions "little credence." This rejection is apparently based upon "obvious erasures" on the sheet completed by Dr. O'Connor and that the letter of August 15, 2006 was authored in contemplation of the hearing on remand. (Tr. 767). Again, Dr. O'Connor, while not a treating physician, was a consultative examiner. The reasons for the rejection of his opinions are curious and vague. Recitation to the medical record should be made to specifically state the medical basis for rejecting an opinion. On remand, the ALJ shall once again do so.

With regard to Dr. Reinhardt's opinions, the ALJ adopted those which were favorable to his decision to find Claimant not disabled but simply failed to mention the portions of Dr. Reinhardt's opinion which did not support such a conclusion. An ALJ cannot pick and choose which portions of a medical opinion he may adopt. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). Further explanation shall be provided on remand.

### Claimant's RFC

Claimant also contends the ALJ's RFC evaluation is not supported by substantial evidence. Because the medical opinion evidence has not all be properly evaluated, the ALJ's RFC determination is necessarily faulty. On remand, the ALJ shall

revisit this issue.

Claimant also requests that this Court take the extraordinary step of ordering the awarding of benefits outright because of the multiple remands and failure of the various ALJ's to properly evaluate the evidence as ordered. While this might be tempting due to the ridiculously long time that this matter has gone on, this Court will not do so in order to permit the ALJ to properly evaluate the medical opinion evidence in this case.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings consistent with this Report and Recommendation. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 21st day of September, 2009.

                                */s/ Kimberly E. West*
                                KIMBERLY E. WEST
                                UNITED STATES MAGISTRATE JUDGE